# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# COLUMBUS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CASE NO. 4:18-MJ-109-MSH |
| | : | |
| THOMAS A RIZZO, | : | |
| | : | |
| Defendant. | : | |

## ORDER

On November 24, 2018, Defendant moved to suppress "all evidence" in this case. Mot. to Suppress 4, ECF No. 7. The Court held a hearing on Defendant's motion on January 9, 2019. For the reasons explained below, Defendant's motion is denied.

## FINDINGS OF FACT

Defendant Thomas Rizzo is charged with driving while under the influence of alcohol, driving while under the influence such that it was less safe for him to drive, and failing to maintain his lane while driving. Information 1, ECF No. 1. Early in the morning of September 30, 2018, Lt. Wilkerson was patrolling Dixie Rd. and observed Defendant's vehicle abruptly accelerate in an intersection then weave in and out of the driving lane. Hr'g Tr. 9:55-56. Lt. Wilkerson signaled and stopped Defendant's vehicle at approximately 3:28 A.M. Hr'g Tr. 9:56.

Lt. Wilkerson approached the vehicle and identified himself to Defendant. *Id*. He noticed an alcoholic odor, that the Defendant's eyes were "red" and "glossy," and that Defendant was wearing a green wristband—of a kind commonly distributed at bars—on

his right wrist. Hr'g Tr. 9:57. Lt. Wilkerson called for backup, re-approached the vehicle, and asked Defendant to step out. *Id.* Defendant was then administered three separate field-sobriety tests in accordance with National Highway and Transportation Safety Administration ("NHTSA") guidelines—the "Horizontal Gaze Nystagmus ("HGH")," "Walk and Turn," and "One Leg Stand" tests. Hr'g Tr. 9:57; Gov't's Resp. to Mot. to Suppress Ex. 2, ECF No. 9-2.

Lt. Wilkerson found that, during the "Walk and Turn" test, Defendant was unable to maintain his balance, stepped off the prescribed walk line, and failed to "make the proper turn." Hr'g Tr. 10:00. Defendant performed adequately during the "One Leg Stand" test's instruction phase, but "swayed back and forth" and "hopped" multiple times during the performance phase. Hr'g Tr. 10:00-01. He was also unable to count as instructed. Hr'g Tr. 10:01. Based on his performance in these tests, Lt. Wilkerson assessed that Defendant had shown "clear signs of impairment." *Id.* Defendant also consented to, and was administered, a portable breath test which showed "the presence of alcohol [in his system]." Hr'g Tr. 10:02. Lt. Wilkerson then arrested Defendant, searched his person, read him the federal implied consent notice, and transported him to the military police station. Hr'g Tr. 10:02; Gov't's Resp. to Mot. to Suppress 2, ECF No. 9.

## DISCUSSION

In his motion to suppress, Defendant argues that he was driving lawfully when Lt. Wilkerson initiated the traffic stop, the field sobriety tests were not properly conducted, Lt. Wilkerson is not sufficiently trained in field sobriety testing, and that he did not exhibit "sufficient signs of impairment to justify his arrest." Mot. to Suppress 2. Defendant's

counsel has since acknowledged that his argument "is not that there was a failure of probable cause to stop [Defendant]" but instead, that "once the stop was affected under [*Terry v. Ohio*, 392 U.S. 1, 30 (1968) and its progeny] it was extended an unconstitutional period of time" and evidence resulting from it should be suppressed. Hr'g Tr. 10:31-32. The Government contends that "probable cause clearly existed to arrest the Defendant." Gov't's Resp. to Mot. to Suppress 3.

Under *Terry*, an officer may stop and briefly detain an individual if the officer has reasonable suspicion that a crime is afoot. A stop is supported by reasonable suspicion if, under the totality of the circumstances, the officer has an objectively reasonable suspicion that the individual has engaged, or is about to engage, in a crime. *United States v. Acosta*, 363 F.3d 1141, 1144-45 (11th Cir. 2004). "[O]nce an officer has briefly stopped a motor vehicle operator for the purpose of issuing a traffic violation (*i.e.*, a ticket)," the Fourth Amendment permits the officer to detain the vehicle's occupants "only if the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *United States v. Pruitt*, 174 F.3d 1215, 1219 (11th Cir. 1999). The detention must "last no longer than is necessary to effectuate the purpose of the stop," and "the scope of the detention must be carefully tailored to its underlying justification.'" *Id.* at 1220 (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)).

Generally, this rule allows an officer conducting a routine traffic stop to obtain the "driver's license and vehicle registration, run a computer check [on the license and vehicle], and issue a citation." *Id.* at 1219. Notably, an officer's "diligence does not

3

provide the officer with cover to slip in a few unrelated questions." *United States v. Campbell*, No. 16-10128, 2019 WL 125649, at *8 (11th Cir. Jan. 8, 2019). Further, the "length of time [of the stop] is immaterial." *Id*. at *9 (citing *Rodriguez v. United States*, 135 S. Ct. 1609, 1613, (2015). A traffic stop can be unconstitutionally prolonged by an officer "before or after" she completes her investigation. *Campbell*, No. 16-10128, 2019 WL 125649, at *8. A traffic stop, thus, "is unlawfully prolonged when an officer, without reasonable suspicion, diverts from the stop's purpose and adds time to the stop in order to investigate other crimes." *Id*. at *9. Essentially, if an officer "conduct[s] an unrelated inquiry aimed at investigating other crimes[,] that adds time to the stop[,] without reasonable suspicion" the stop has been unlawfully prolonged. *Id*.

Here, it is clear that, based on the totality of the circumstances, Lt. Wilkerson had probable cause to arrest Defendant for driving while under the influence of alcohol. The Defendant has conceded that Lt. Wilkerson had probable cause to initiate the traffic stop. When he approached Defendant's car as usual, he noticed a strong smell of alcohol, Defendant's "glossy and "red" eyes, and a wristband that Defendant likely obtained at a bar or club. Hr'g Tr. 9:57; *see, e.g*., *Schmerber v. California*, 384 U.S. 757, 768-69 (1966) (finding that the officer "plainly" had probable cause when he observed an odor of alcohol and driver's eyes were "bloodshot, watery, [and] . . . glassy"). Lt. Wilkerson reasonably determined that field sobriety tests were called for based on these observations, then administered them. After observing Defendant's performance on those tests[1], and

---

[1] The Court finds Defendant's contention that Lt. Wilkerson "was not sufficiently trained to conduct field sobriety testing and, as a result, [is] unqualified to determine Defendant's impairment

4

considering his initial observations, Lt. Wilkerson arrested Defendant, read him the federal implied consent notice, and transported him to the military police base. He did not divert from the stop's original purpose—investigating Defendant' improper driving. Instead, he followed it to its logical conclusion based on the evidence he legally observed. Accordingly, Defendant's motion to suppress is denied.

## CONCLUSION

For the reasons explained above, Defendant's motion to suppress (ECF No. 7) is denied.

SO ORDERED, this 16th day of January, 2019.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE

---

or probable cause for an arrest based on those tests[]" to be without merit, as Lt. Wilkerson has received extensive police training which has included training in the administration of field sobriety tests such as those administered to Defendant. *See* Hr'g Tr. 10:10; Mot. to Suppress 2, ECF No. 7.